United States Court of Appeals
Fifth Circuit

**F I L E D**

December 19, 2003

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 03-20407

_____

Robert DeShazo; Andea DeShazo,

Plaintiffs - Appellants,

versus

Baker Hughes Oilfield Operations, Inc., Et al,

Defendants,

Baker Hughes Oilfield Operations, Inc.,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Texas
District Court No. H-00-CV-2698

_____

Before HIGGINBOTHAM, DAVIS and PRADO, Circuit Judges.[1]

PER CURIAM.

Appellants Robert DeShazo and Andea DeShazo appeal from the

district court's grant of summary judgment in favor of Appellee

Baker Hughes Oilfield Operations, Inc.  Finding no error, we

affirm.

This appeal concerns what law should apply to Appellants'

_____

[1]Pursuant to 5th Cir. R. 47.5, this Court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5th Cir. R.
47.5.4.

1

personal injury claims. Appellant Robert DeShazo sued his former employer, Baker Hughes Oilfield Operations, Inc. (BHOO) to recover damages for the injuries he received during an automobile accident in Egypt. At the time of the accident, DeShazo was a passenger; an employee of a BHOO subsidiary was driving.

Originally, DeShazo filed a Jones Act suit in the Eastern District of Louisiana. The district court dismissed that suit after determining that DeShazo was not a Jones Act seaman. Subsequently, DeShazo and his ex-wife, Andea DeShazo, filed the current diversity suit in the Southern District of Texas, claiming that BHOO was liable for the negligence of its driver.[2] The district court granted BHOO's motion for summary judgment, concluding that the exclusive remedy provision of the Louisiana Workers' Compensation Act barred the DeShazos' claims. Attaching additional evidence, the DeShazos filed a motion for new trial or for reconsideration, which the district court denied. This appeal followed.

On appeal, the DeShazos make two arguments. First, they argue that fact questions about Robert DeShazo's intent to form a Louisiana contract make summary judgment improper. Second, they argue that the district court erred in applying Louisiana law. Instead, the DeShazos contend that Egyptian law should apply to their claims.

---

[2]Claims against two other defendants were dismissed.

2

We review the grant of summary judgment *de novo*, using the same standards as the district court. <u>Hanks v. Transcon. Gas Pipe Line Corp.</u>, 953 F.2d 996, 997 (5th Cir. 1992). To be entitled to summary judgment, the movant must show the absence of any genuine issue of material fact. <u>Taylor v. Gregg</u>, 36 F.3d 453, 457 (5th Cir. 1994).

In its ruling on BHOO's summary judgment motion, the district court first concluded that DeShazo's claims were governed by Louisiana law, specifically the Louisiana Workers' Compensation Act. This act provides the exclusive remedy, with some irrelevant exceptions, for a Louisiana worker injured in the course of employment. LA. REV. STAT. § 23:1032. The district court concluded that this law barred the DeShazos' negligence claims.

In reviewing this case, we must first determine what law applies to the DeShazos' claims. To begin with, a federal district court sitting in diversity applies its forum state's choice-of-law rules. <u>Klaxon Co. v. Stentor Elec. Mfg. Co</u>., 313 U.S. 487, 496 (1941). Thus, the district court here properly looked to Texas choice-of-law rules to determine what law to apply. In general, Texas courts follow the most significant relationship test when deciding what law to apply in a case. <u>Duncan v. Cessna Aircraft Co.</u>, 665 S.W.2d 414, 421 (Tex. 1984). But Texas courts follow Section 184 of the Restatement (Second)

3

of Conflict of Laws when determining whether an exclusive-remedy provision of a state's workers' compensation law applies. <u>Hughes Wood Prods., Inc. v. Wagner</u>, 18 S.W.3d 202, 205 (Tex. 2000). Section 184 states:

> Recovery for tort or wrongful death will not be permitted in any state if the defendant is declared immune from such liability by the workmen's compensation statute of a state under which the defendant is required to provide insurance against the particular risk and under which
> (a)  the plaintiff has obtained an award for the injury, or
> (b)  the plaintiff could obtain an award for the injury, if this is the state (1) where the injury occurred, or (2) where employment is principally located, or (3) where the employer supervised the employee's activities from a place of business in the state, or (4) whose local law governs the contract of employment under the rules of §§ 187-188 and 196.

The parties agree that the Louisiana workers' compensation law can only apply, if at all, under section 184(b)(4).[3] Thus, there are really two questions. First, could Robert DeShazo obtain an award for his injury in Louisiana, and second, does Louisiana law govern his employment contract?

<u>Could Robert DeShazo obtain an award for his injury in Louisiana?</u>

Under certain circumstances, the Louisiana Workers' Compensation Act applies to injuries occurring outside Louisiana:

> (1) If an employee, while working outside the territorial limits of this state, suffers an injury on account of which he, or in the event of his death, his

---

[3] Although BHOO voluntarily paid Robert DeShazo money it called worker's compensation benefits, the district court concluded that these payments did not qualify as an "award" for purposes of § 184. BHOO has not challenged this conclusion.

4

> dependents, would have been entitled to the benefits provided by this Chapter had such injury occurred within this state, such employee, or in the event of his death resulting from such injury, his dependents, shall be entitled to the benefits provided by this Chapter, provided that at the time of such injury
>
> (a)  his employment is principally localized in this state, or
>
> (b)  he is working under a contract of hire made in this state.
>
> LA. REV. STAT. § 23:1032

Under this extraterritorial provision, the central question is whether Robert DeShazo was working under a contract of hire made in Louisiana.  As the DeShazos point out, Louisiana courts have stated that "[i]n determining the origin of a contract of hire, the parties' intent should be paramount."  Harvey v. B E & K Constr., 716 So. 514, 516, 30,825 (La. App. 2d Cir. 8/19/98). The factors for determining whether the parties intended to form a Louisiana contract include the parties' domicile, the nature of the work to be performed under the contract, and the location where the parties initiated employment.  Id.  DeShazo argues that fact questions concerning this intent should have prevented the district judge from granting summary judgment.

The parties agree about most of the underlying facts.  BHOO contacted Robert DeShazo at his home in Louisiana to see if he was interested in working for BHOO in Egypt.  DeShazo was living and working in Louisiana at the time, and listed an address in Louisiana as his permanent address on his BHOO employment application.  DeShazo accepted employment in Louisiana and dropped off his employment forms at BHOO's Houma, Louisiana

5

office.  As an employment requirement, DeShazo underwent drug and alcohol testing in Lousiana.  The initial plane tickets to Egypt were delivered to DeShazo in Louisiana.  Finally, DeShazo moved to Mississippi at some point after beginning employment with BHOO.

On appeal, the DeShazos argue that Robert DeShazo's Louisiana residence was only temporary, however, and that he maintained his permanent domicile in Mississippi.  According to the DeShazos, his undisclosed plan to move means that DeShazo never intended to form a Louisiana contract and that Egyptian law should apply to the negligence claims.

The district judge concluded that there were no fact questions about the parties' intent to form a Louisiana contract. The DeShazos argue that the district court erred because they presented evidence to support a fact question about Robert DeShazo's intent.  In support of his contention that he never intended to form a Louisiana contract, the DeShazos point solely to Robert's alleged intent to move to Mississippi.[4]

---

[4] Most of the evidence that the DeShazos cite to as part of their argument that Robert DeShazo was domiciled in Mississippi was not before the district court until the motion for new trial. In particular, the DeShazos' argument is largely based on the affidavit that Robert DeShazo signed on August 17, 2002 and filed on August 19, 2002.  Both dates are after the August 8, 2002 summary judgment order.  It is this affidavit, not the affidavit attached to the DeShazos' summary judgment response, that argues that DeShazo intended to move to Mississippi.  Thus, the district court's description of the DeShazos' statements about intent as "bald assertions" was not off the mark.

Both sides cite Louisiana cases to support their arguments. These cases do not present a clear rule; rather, they appear to be fairly fact-specific. The Deshazos emphasize two cases in particular. In <u>Milligan v. Glenburney Nursing Home</u>, 408 So.2d 40, 41 (La. App. 3d Cir. 1981), the first of these cases, the plaintiff, a nurses' aide living in Louisiana, received an employment application at her home. The application was for a Mississippi nursing home. <u>Id</u>. The plaintiff filled out the application in Louisiana, but interviewed in Mississippi and signed papers in Mississippi. <u>Id</u>. In Mississippi, the parties agreed that the plaintiff would be employed, but could not determine her starting date. <u>Id</u>. Someone from the nursing home called plaintiff at her home in Louisiana to tell her of her starting date. <u>Id</u>. After that, the plaintiff reported to work in Mississippi, and at some point during that work she was injured. <u>Id</u>. The court in <u>Milligan</u>, after reviewing the relevant factors, concluded that the contract was a Mississippi one; the parties intended to create a Mississippi employment relationship and a Mississippi contract. <u>Id</u>. at 42.

The DeShazos also point to <u>Robinson v. Independent Freightway</u>, 673 So.2d 1091, 94-786 (La. App. 5th Cir. 4/16/96). In <u>Robinson</u>, a truck driver who lived in Louisiana submitted an application to an Illinois company in Illinois. <u>Id</u>. at 1093. He then underwent federally-required drug and road tests in Louisiana. <u>Id</u>. He signed an employment contract in Louisiana and

7

the company then signed the contract in Illinois.  Id.  The trial court found that Robinson's contract was not a Louisiana contract of hire, and the appellate court affirmed those findings. Id.

In contrast, the district court cited several cases in which courts found that the parties had formed a Louisiana contract. The first of these cases is Offord v. Border to Border Trucking, 779 So.2d 1090, 2000-1201 (La. App. 3d Cir. 2/7/01).  In Offord, the workers' compensation claimant, a Louisiana resident who worked as a truck driver for a Texas company, suffered an injury on the job in Tennessee.  Id. at 1091.  The story of the claimant's hiring was as follows.  The defendant company had brought an employment application to the claimant at his Louisiana home.  Id. at 1092.  After the claimant filled out the application in Louisiana, another employee of the defendant company picked up the application from claimant in Louisiana and drove it to Texas.  Id.  The claimant received a job offer via a telephone call to his house in Louisiana and was then transported to Texas where he completed the remaining employment formalities. Id.  The Offord court determined that this situation was almost identical to another case in which a truck driver had been found to be operating under a Louisiana contract of hire.  Id.  The court affirmed the administrative judge's determination that this was a Louisiana contract of hire.  Id. at 1093.

The district court also cited Lakvold v. Stevens Transport, 665 So.2d 828 (La. App. 1st Cir. 1995).  In Lakvold, an appeals

8

court reversed a trial court's conclusion that an employee was not working under a Louisiana contract. Id. at 830. The employer's representative had contacted the employee in Louisiana and gave him an application there. Id. at 829. The employee completed in the application in Louisiana, which was also where the employer notified the employee that it had accepted his employment application. Id. The employee went to orientation in Texas, where he also completed additional employment-related forms. Id. at 829-30. The employer paid for his travel to Texas for the orientation. Id. The court concluded that the contract had been formed in Louisiana, making it a Louisiana contract of hire. Id. at 830.

The district court correctly concluded that no fact question existed concerning the parties' intent to form a Louisiana contract. Robert DeShazo's undisclosed intent to move to Mississippi does not create a fact question regarding whether the parties intended to form a Louisiana contract.[5] And although the caselaw is not conclusive, on the whole, the facts here more resemble Offord than they do Milligan. DeShazo was called in Louisiana, where he was living, he completed the paperwork in Louisiana, he dealt with BHOO's Louisiana office, and he originally departed to Egypt from Louisiana.

---

[5] Therefore, the DeShazos' argument that several of the cases the district court cited were decided after trial, not on summary judgment, is irrelevant.

The DeShazos also argue that because Robert DeShazo was an at-will employee, his contract was formed again each time he reported for work in Egypt. Because he had moved to Mississippi before the hitch during which he was injured, Robert DeShazo argues he was operating under a completely different contract from the one he entered into originally. Yet the DeShazos find little support for the contention that this move changed the place of contracting. They only support this argument with broad language about the nature of at-will employment, particularly language indicating that parties constantly remake an at-will contract. The DeShazos have not, however, pointed to any Louisiana case in which this principle is use to change the place where the parties formed a contract. Louisiana courts seem unlikely to interpret the statutory language "a contract of hire made in this state" so that an at-will employee could change where his contract was made simply by moving to a different state after being hired.

Does Louisiana law govern DeShazo's employment contract?

The second factor in determining whether the Louisiana Workers' Compensation Act applies is whether Louisiana law governs Robert DeShazo's employment contract with BHOO. RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 184.

Texas courts generally follow Section 196 when determining what law applies to a contract for services. Pruitt v. Levi Strauss & Co., 932 F.2d 458, 461 (5th Cir. 1991). This section

provides:

> The validity of a contract for the rendition of services and the rights created thereby are determined, in the absence of an effective choice of law by the parties, by the local law of the state where the contract requires that the services, or a major portion of the services, be rendered, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties, in which the event the local law of the other state will be applied

This section supports the DeShazos' argument that Egyptian law should apply to the contract.  Egypt was, after all, the place where a major portion of the services were to be rendered, and the place of performance is generally conclusive of the issue. Pruitt, 932 at 461 (quoting DeSantis v. Wackenhut Corp., 793 S.W.2d 670, 679 (Tex. 1990)).  But there are exceptions, and for these exceptions, the question then becomes whether some other state has a more significant relationship under Section 6 of the Restatement.

These relevant factors are:

(a)  the needs of the interstate and international systems,
(b)  the relevant policies of the forum,
(c)  the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
(d)  the protection of justified expectations,
(e)  the basic policies underlying the particular field of law,
(f)  certainty, predictability and uniformity of result, and
(g)  ease in the determination and application of the law to be applied.

RESTATEMENT (SECOND) OF CONFLICT OF LAWS §6(2).

The district court found that, under this section,

11

Louisiana had a more significant relationship with the contract than Egypt did. The district court concluded that by including the extraterritorial provision, Louisiana expressed a strong interest in having its workers' compensation laws applied to Louisiana workers injured outside the state. The district court also concluded that uniform application is important to the workers' compensation system's effectiveness. These interests, according to the district court, far outweighed any interest Egypt might have in having its tort laws applied to a United States citizen harmed by an employee of a United States company. And as did the district court, we conclude that, contrary to the DeShazos' arguments and charts, "the number of contacts with a state is not determinative." Torrington Co. v. Stutzman, 46 S.W.3d 829, 848 (Tex. 2000). We agree with the district court's thoughtful analysis; Louisiana law applies to Robert DeShazo's employment contract, and therefore the DeShazos are limited to Louisiana workers' compensation remedies.

AFFIRMED